UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LEE ANTWAN JOHNSON,

       Petitioner,

vs.                       Case No. 3:19-cv-1441-HLA-LLL

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

       Respondents.

_____

## ORDER

### I.   STATUS

In his Petition Under 28 U.S.C. § 2254 by a Person in Custody Pursuant to a State Court Judgment (Petition) (Doc. 1), Petitioner raises five grounds claiming ineffective assistance of trial counsel and challenges a 2012 state court (Duval County) conviction for first degree felony murder and attempted robbery.  He filed a Memorandum of Law in Support of Writ of Habeas Corpus (Doc. 2) in support of the Petition. Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 11) and an Appendix (Doc. 11).[1]   Petitioner filed a Reply

---

[1] Respondents filed an Appendix (Doc. 11).   The Court hereinafter refers to the exhibits as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp

to Secretary's Response to Petition for Writ of Habeas Corpus (Doc. 12). See Order (Doc. 10).

Respondents concede the Petition is timely filed.   Response at 6-8. No evidentiary proceedings are required in this Court.   The pertinent facts are fully developed in the record, or the record otherwise precludes habeas relief; therefore, the Court can adequately assess the claims without any further factual development.   Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

## II.   HABEAS REVIEW

Federal courts are authorized to grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   Lee v. GDCP Warden, 987 F.3d 1007, 1017 (11th Cir.) (quoting 28 U.S.C. § 2254), cert. denied, 142 S. Ct. 599 (2021).   For issues previously decided by a state court on the merits, this Court must review the underlying state-court decision under the Antiterrorism and Effective Death Penalty Act of 1996

---

numbers at the bottom of each page of the Appendix.   Otherwise, the page number on the particular document will be referenced.   The Court references the docket and page numbers assigned by the electronic filing system for the Petition and Response.

2

(AEDPA).   In doing so, a federal district court must employ a very deferential framework.   <u>Sealey v. Warden, Ga. Diagnostic Prison</u>, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), <u>cert. denied</u>, 141 S. Ct. 2469 (2021); <u>Shoop v. Hill</u>, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

Thus, "[u]nder AEDPA, a court cannot grant relief unless the state court's decision on the merits was 'contrary to, or involved an unreasonable application of,' Supreme Court precedent, or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"   <u>McKiver v. Sec'y, Fla. Dep't of Corr.</u>, 991 F.3d 1357, 1364 (11th Cir.) (citing 28 U.S.C. § 2254(d)(1)-(2)), <u>cert. denied</u>, 142 S. Ct. 441 (2021).   The Eleventh Circuit instructs:

> A state court's decision is "contrary to" clearly established federal law if the state court either reaches a conclusion opposite to the Supreme Court of the United States on a question of law or reaches a different outcome than the Supreme Court in a case with "materially indistinguishable

> facts." Williams v. Taylor, 529 U.S. 362, 412-13,
> 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). "Under
> the 'unreasonable application' clause, a federal
> habeas court may grant the writ if the state court
> identifies the correct governing legal principle"
> from Supreme Court precedents "but
> unreasonably applies that principle to the facts of
> the prisoner's case." Id. at 413, 120 S. Ct. 1495.

Lee, 987 F.3d at 1017-18. Therefore, habeas relief is limited to those

occasions where the state court's determinations are unreasonable, that

is, if no fairminded jurist could agree with them. McKiver, 991 F.3d at

1364.

This is a high hurdle, not easily surmounted. If the state court

applied clearly established federal law to reasonably determined facts

when determining a claim on its merits, "a federal habeas court may not

disturb the state court's decision unless its error lies 'beyond any

possibility for fairminded disagreement.'" Shinn v. Kayer, 141 S. Ct.

517, 520 (2020) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86,

103 (2011)). Also, a state court's finding of fact, whether a state trial

court or appellate court, is entitled to a presumption of correctness under

28 U.S.C. § 2254(e)(1). "The state court's factual determinations are

presumed correct, absent clear and convincing evidence to the contrary."

4

Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)).   See Hayes v. Sec'y, Fla. Dep't of Corr., 10 F.4th 1203, 1220 (11th Cir. 2021) (Newsome, Circuit Judge, concurring) (recognizing the universal requirement, applicable to all federal habeas proceedings of state prisoners, set forth in 28 U.S.C. § 2254(e)(1)).   This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (acknowledging the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014).   Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference."   Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)), cert. denied, 142 S. Ct. 124 (2021).   As such, a federal district court may not supersede a state court's determination simply because reasonable minds may disagree about the finding.   Id. (quotation and citation omitted).

Finally, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that

judgment, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

### III.   INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are "governed by the familiar two-part Strickland standard." Knight v. Fla. Dep't of Corr., 958 F.3d 1035, 1038 (11th Cir. 2020), cert. denied, 141 S. Ct. 2471 (2021). Pursuant to this standard, "a defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. Strickland, v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). We need not address both prongs if a petitioner makes an insufficient showing on one prong. Id. at 697, 104 S. Ct. 2052." Fifield v. Sec'y, Dep't of Corr., 849 F. App'x 829, 833 (11th Cir. 2021) (per curiam), cert. denied, 142 S. Ct. 788 (2022).

To prevail, a petitioner must successfully show his counsel "made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment" as well as show "the

deficient performance prejudiced the defendant, depriving him of a 'fair

trial, a trial whose result is reliable.'" <u>Raheem v. GDCP Warden</u>, 995

F.3d 895, 908 (11th Cir. 2021) (quoting <u>Strickland</u>, 466 U.S. at 687), <u>cert.</u>

<u>denied</u>, 142 S. Ct. 1234 (2022).   Additionally,

> because "[t]he standards created by <u>Strickland</u>
> and § 2254(d) are both 'highly deferential,' . . .
> when the two apply in tandem, review is 'doubly'
> so.   <u>Harrington [v. Richter</u>, 562 U.S. 86, 105
> (2011)] (internal citations and quotation omitted).
> Thus, under § 2254(d), "the question is not
> whether counsel's actions were reasonable.   The
> question is whether there is any reasonable
> argument that counsel satisfied <u>Strickland</u>'s
> deferential standard."   <u>Id</u>.

<u>Tuomi v. Sec'y, Fla. Dep't of Corr.</u>, 980 F.3d 787, 795 (11th Cir. 2020),

<u>cert. denied</u>, 141 S. Ct. 1721 (2021).

## IV.   GROUND ONE

**Ground One:   Whether the state court erred in denying
Petitioner's claim that trial counsel was ineffective for failing to
move for a judgment of acquittal based on the state relying on
the same act, the shooting of the victim, to prove both the felony
murder and the underlying felony of attempted robbery.**

In this ground, Petitioner raises a Sixth Amendment claim asserting he received ineffective assistance of trial counsel for failure to move for a judgment of acquittal based on the state's reliance on the same act, the shooting of the victim, to prove both felony murder and the underlying felony of attempted robbery.   Petition at 6.   As noted by the circuit court, "[t]o sustain a conviction for felony murder, the State must prove there was an intentional act resulting in death which was not an essential element of the underlying felony."   Ex. Q at 39 (citation omitted).

Upon review, Petitioner raised a comparable claim in his motion for post-conviction relief as ground one.   Ex. Q at 3-9.   Applying the Strickland standard, id. at 38-39, the circuit court denied the claim of ineffective assistance of trial counsel.   Id. at 39-40.

Petitioner appealed the denial of post-conviction relief and the First District Court of Appeal (1st DCA) affirmed per curiam.   Ex. T; Ex. U; Ex. V.   The mandate issued on October 10, 2019.   Ex. W.

In pertinent part, the Indictment reads:

> LEE ANTWAN   JOHNSON on the 12th day of August, 2009, in the County of Duval and the State

8

of Florida, unlawfully and from a premeditated design to effect the death of Kenneth Pittman, did then and there kill the said Kenneth Pittman, a human being, by shooting him and during the commission of the aforementioned Murder in the First Degree the said LEE ANTWAN JOHNSON carry, display or use and did actually possess and did discharge a firearm and as a result of the discharge, death or great bodily harm was inflicted upon any person, contrary to the provisions of Section(s) 782.04(1)(a) and 775.087(1) and (2), Florida Statutes.

## SECOND COUNT

LEE ANTWAN JOHNSON on the 12th day of August, 2009, in the County of Duval and the State of Florida, did unlawfully by force, violence, assault, or putting in fear, attempt to take money or other property, the property of Kenneth Pittman, from the person or custody of Kenneth Pittman, and during the commission of the aforementioned attempted robbery the said LEE ANTWAN JOHNSON did actually possess and discharge a firearm and as a result of the discharge, death or great bodily harm was inflicted upon any person, contrary to the provisions of Section(s) 812.13(2)(a), 775.087(2)(a)3 and 777.04(1), Florida Statutes.

Ex. A at 21.

The record demonstrates, at the close of the state's case, defense counsel, Charles Fletcher, moved for a judgment of acquittal, asserting

the state failed to present a prima facie case of guilt.   Ex. G at 315.   The court denied the motion.   Id.   After the defense rested, the defense renewed its previously raised motion for judgment of acquittal.   Id. at 351.   The court denied the motion finding, "[t]here's at least a prima facie case here."   Id.

In denying post-conviction relief, the court rejected Petitioner's claim of ineffectiveness, noting that the cases upon which Petitioner relied were no longer "good law."   Ex. Q at 39.   The court noted, according to recent decisional law, "the intentional act of shooting the victim is not an essential element of attempted robbery, and would support a separate conviction for felony murder."   Id. at 39-40 (citation omitted).   The court found it sufficient to point the gun, as an act of "force, violence, assault, or putting in fear[.]" Id. at 40.   The 1st DCA affirmed.   Ex. V.

As the state court properly applied the two-pronged Strickland standard of review, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the court denied the claim based on Strickland. Thus, this Court must ask whether the court unreasonably applied that

principle to the facts of Petitioner's case or premised its adjudication of the claim on an unreasonable determination of the facts.   This Court is not convinced that there was an unreasonable application or an unreasonable determination of the facts.   An explanation follows.

With regard to the robbery count, the court instructed the jury, in pertinent part, as follows:

> As to count two, to prove the crime of attempt to commit robbery, the State must prove the following two elements beyond a reasonable doubt: One, Lee Antwan Johnson did some act toward committing the crime of robbery that went beyond just thinking or talking about it; two, he would have committed the crime except that someone prevented him from committing the crime of robbery or he failed.

> * * * *

> The crime of robbery is defined as follows: To prove the crime of robbery, the State must prove the following four elements beyond a reasonable doubt:   One, Lee Antwan Johnson took money or other property from the person or custody of Kenneth Pittman; two, force, violence, assault or putting in fear was used in the course of the taking; three, the property taken was of some value and, four, the taking was with the intent to permanently or temporarily deprive Kenneth Pittman of his right to his property or any benefit from it or appropriate the property of Kenneth

11

Pittman to his own use or to the use of any person not entitled to it.

\* \* \* \*

The taking must be by the use of force or violence or assault so as to overcome the resistance of the victim or by putting the victim in fear so that the victim does not resist. The law does not require that the victim of robbery resist to any particular extent or that the victim offer any actual physical resistance if the circumstances are such that the victim is placed in fear of death or great bodily harm if he or she does resist. But unless prevented by fear, there must be some resistance to make the taking one done by force or violence.

Ex. G at 415-17.

For count one, felony murder, the court instructed:

As to count one, to prove the crime of first degree felony murder the State must prove the following three elements beyond a reasonable doubt: One, Kenneth Pittman is dead; two, the death occurred as a consequence of and while Lee Antwan Johnson was attempting to commit robbery and, three, **Lee Antwan Johnson was the person who actually killed Kenneth Pittman or Kenneth Pittman was killed by a person other than Lee Antwan Johnson, but both Lee Antwan Johnson and the person who killed Kenneth Pittman were principals in the commission of attempted robbery.**

> If the defendant helped another person or persons commit or attempt to commit a crime, the defendant is a principal and must be treated as if he had done all the things that the other person or persons did if, one, the defendant had a conscious intent that the criminal act be done and, two, the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually commit or attempt to commit the crime.
>
> To be a principal the defendant does not have to be present when the crime is committed or attempted.

Id. at 413-14 (emphasis added).

Under the state's theory of the case, three individuals, Lamont Brown, the driver; Petitioner, the supplier of the gun and the shooter; and Earl Johnson, the idea man who accompanied Petitioner to the door of the victim's trailer, planned to rob the victim.   See Ex. G at 184-87. Mr. Brown testified that Petitioner had a gun, he brought his gun as planned and hid it under the hood of the car, at some point Mr. Brown stopped the car and Petitioner took the gun out from under the hood of the car, and finally, Petitioner and Earl Johnson got out of the car and walked to the trailer.   Id. at 242-46.   Earl Johnson testified that both

he and Petitioner walked up to the victim's trailer, and when the victim opened the door dressed in a towel, Petitioner shot the victim.  Id. at 189-90.  Petitioner took the stand and denied his involvement in the robbery and presence at the seen of the shooting.  Id. at 321-22.

The jury returned a verdict finding Petitioner guilty of murder in the first degree, finding the murder was felony murder and Petitioner did not actually possess a firearm during the commission of the offense.  Ex. D at 725-26.  The jury also returned a verdict finding Petitioner guilty of attempted robbery, finding Petitioner did not carry a firearm or weapon nor did he actually possess a firearm.  Id. at 727-28.

The circuit court denied Petitioner's claim finding counsel cannot be deemed ineffective for failure to move for a judgment of acquittal based on the state's failure to prove a separate act, besides shooting, to prove the felony of attempted robbery.  Ex. Q at 40.  The court concluded it was enough to have the gun pointed at the victim, completing the statutory element of robbery or attempted robbery.  Id.  The court determined, "[s]hooting is a separate, independent act over and above this statutory element."  Id.  As such, the court found counsel could not

be deemed ineffective for failure to move for a judgment of acquittal on the basis that the state failed to prove a separate act for the felony murder over and above the elements of attempted robbery.   Id.

The jury found Petitioner was neither the shooter nor in possession of the firearm or a weapon.   Ex. D at 725-728.   However, the jury found Petitioner guilty of felony murder and attempted robbery.   Id.   Thus, the jury found Petitioner to be a principal in the commission of the offenses.

In Florida, pointing a gun is sufficient to prove the underlying felony of attempted robbery as it is an independent act from the intentional act of shooting the victim.   Sullivan v. State, 254 So. 3d 1144, 1146 (Fla. 3rd DCA 2018).   See Newbhard v. State, 237 So. 3d 1075, 1078 (Fla. 3rd DCA 2017) (finding the pointing of the gun enough to establish the use of force element for the underlying attempted robbery).   Indeed, an attempt to rob the victim by pointing a gun at the victim and then thereafter shooting the victim is "sufficiently distinct to support the felony murder charge."   Williams v. Fla. Dep't of Corr., 770 F. App'x 495, 496 (11th Cir. 2019) (per curiam).   As such, counsel did not perform

15

deficiently in failing to move for a judgment of acquittal asserting the state's reliance on the single act of shooting to prove both the attempted robbery and the felony murder.

Upon review, the circuit court did not make an unreasonable determination of the facts. These findings of fact are entitled to the presumption of correctness. 28 U.S.C. § 2254(e)(1). Petitioner has not presented clear and convincing evidence to the contrary; therefore, the presumption of correctness applies to the findings of fact. Upon review, the state court did not unreasonably apply Strickland to the facts before it. The court applied clearly established federal law to reasonably determined facts. Therefore, this Court will not disturb the state court's decision as the determination was not unreasonable.

As there was one reasoned state court judgment rejecting the claim of ineffective assistance of counsel followed by an unexplained order by the 1st DCA upholding the judgment, this Court will employ the look through presumption and presume the 1st DCA adopted the same reasoning. Applying the look through presumption described in Wilson, the state court's ruling is based on a reasonable determination of the facts

16

and a reasonable application of the law.   Deference is due to the 1st DCA's decision as the state court's adjudication of the claim is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.   As such, ground one is denied.

Furthermore, as noted by Respondents, there was other testimony supporting the state's contention that Petitioner and his co-defendants planned to rob the victim, Petitioner took part in the robbery, and the robbery was foiled, resulting in the death of the victim.   Response at 26. Under these circumstances, Petitioner has not shown that a more specific motion for judgment of acquittal had a likelihood of success.   Indeed, even a more artful motion for judgment of acquittal would not have been successful as there was enough evidence introduced at trial to support Petitioner's conviction.   As such, Petitioner is not entitled to habeas relief on ground one.

## V.   GROUND TWO

**Ground Two:**   **Whether the state court erred in denying Petitioner's claim that trial counsel was ineffective for failing to**

**object and move for a mistrial when the state improperly shifted the burden of proof to the Defendant during closing argument.**

Petitioner, in support of this contention, highlights comments made by the prosecutor, asserting these comments suggested to the jury that it was Petitioner's responsibility to prove his innocence.   Petition at 9. Specifically, Petitioner references page 404 of the trial transcript:

> What didn't you hear from him today?   You know, Mr. Fletcher says Mr. Mantei didn't ask him a lot of detailed questions and go off on him.   No, because he didn't offer anything.   He didn't say I was really over here.   He didn't say, yeah, the reason these guys are lying is this.   He didn't say – offer you a single logical legitimate explanation. A flat denial went into it.   What did he tell you? Nothing.    This is the crux, the center piece. Didn't do it?

Ex. G at 404.

Petitioner asserts these comments unfairly placed in the minds of the jurors that Petitioner was obliged to provide evidence and his counsel should have objected to the comments and moved for a mistrial.   In sum, he contends the prosecutor's comments were prejudicial as the state improperly shifted the burden of proof.

It is of significance that the prosecutor's statements were made during rebuttal closing argument in response to defense counsel's closing argument.    Mr. Fletcher had argued: "[t]hat was Mr. Mantei's opportunity to blast him, to sink his teeth into him, to go after him. Instead he just kind of mocked him, you didn't do anything about this, did you?  Nothing."  Ex. G at 389.  In response, the prosecutor offered his rebuttal argument for the jury's consideration.

The record shows Petitioner took the stand.  Id. at 321.  He denied he murdered anyone, shot anyone, or planned a robbery.  Id. at 321-22. He attested he did not know the victim and he did not go to Baldwin and participate in any way in an armed robbery that turned into a murder. Id. at 322.  Petitioner said it was a mystery why he was brought into the case, other than "[s]omebody had to put my name in it."  Id. at 323.  He surmised the two co-defendants got caught red-handed and they wanted to blame someone else and named him.  Id. at 325.  Petitioner denied knowing anything about the robbery and murder.  Id. at 327.

Upon review, the prosecutor was properly commenting on testimony in evidence as these comments went to the fact that Petitioner

did not provide an alibi, he did not state he was elsewhere at the time of the crime, and he did not provide a detailed explanation for why the co-defendants would include him as a named participant in the crimes.

With regard to Petitioner's contention that the prosecutor shifted the burden of proof and counsel performed deficiently when he failed to object when the prosecutor argued Petitioner had offered nothing more than an abject denial that he committed the crimes, upon review, there was no improper burden shifting based on the prosecutor's argument.   The argument presented by the prosecutor was merely an interpretation of the evidence presented at trial, including Petitioner's testimony.   In short, the prosecutor's comments were logical inferences based on the testimony and evidence; therefore, there was no deficiency in counsel's performance in failing to object to the comments.

As noted by the circuit court, when the jury is asked to find the state's witnesses are lying, the prosecutor may fairly argue the defendant's testimony insufficiently refutes the state's case and has holes.   Ex. Q at 40 (citing Stancle v. State, 854 So. 2d 228, 229 (Fla. 4th DCA 2003)).   Additionally, the state may attack the defendant's

20

credibility once he takes the stand.   Id.   See Chandler v. State, 702 So. 2d 186, 197 (Fla. 1997) (per curiam), cert. denied, 523 U.S. 1083 (1998); Brighton v. State, 141 So. 3d 579, 582 (Fla. 4th DCA 2014) (noting the prosecutor may suggest to the jury that the defendant's testimony is not credible with a foundation in the record) (citation omitted).

Even if defense counsel had taken the action suggested by Petitioner, there is no reasonable probability that the outcome of the case would have been different.   In closing argument, defense counsel had already skillfully addressed the prosecutor's cross-examination of Petitioner.   Mr. Fletcher said, although the prosecutor had an opportunity to blast Petitioner, the prosecutor simply mocked Petitioner by asking "you didn't do anything about this, did you?   Nothing.   You read all the police reports.   You knew nothing about this?   What else is he going to say?   He didn't do it."   Ex. G at 389.   Mr. Fletcher told the jury, although the prosecutor had the opportunity, he failed to effectively discredit Petitioner's testimony during cross-examination.   Id.   Under these circumstances, defense counsel's performance was not deficient for

failing to object and seek a mistrial based on the prosecutor's comments made during rebuttal argument.

The Eleventh Circuit, in <u>United States v. Jackson</u>, 300 F. App'x 869, 870 (11th Cir. 2008) (per curiam), noted that prosecutors should refrain from making burden-shifting arguments implying the defendant has to present evidence or prove innocence. This Court has reviewed the prosecutor's statements at issue, and the Court is not convinced that the state was making a burden-shifting argument. However, to the extent the prosecutor's argument touched on burden-shifting, any prejudice was cured by the court's instruction regarding the burden of proof. <u>Id.</u> (citing <u>United States v. Simon</u>, 964 F.2d 1082, 1087 (11th Cir. 1992)).

The court instructed:

> As to count one, to prove the crime of first degree premeditated murder, the State must prove the following three elements beyond a reasonable doubt: One, Kenneth Pittman is dead; two, the death was caused by the criminal act of Lee Antwan Johnson and three, there was a premeditated killing of Kenneth Pittman.

Ex. G at 412. The court also instructed:

> As to count one, to prove the crime of first degree felony murder the State must prove the

following three elements beyond a reasonable doubt: One, Kenneth Pittman is dead; two, the death occurred as a consequence of and while Lee Antwan Johnson was attempting to commit robbery and, three Lee Antwan Johnson was the person who actually killed Kenneth Pittman or Kenneth Pittman was killed by a person other than Lee Antwan Johnson, but both Lee Antwan Johnson and the person who killed Kenneth Pittman were principals in the commission of attempted robbery.

Id. at 413.

As to the robbery count, the court instructed:

As to count two, to prove the crime of attempt to commit robbery, the State must prove the following two elements beyond a reasonable doubt: One, Lee Antwan Johnson did some act toward committing the crime of robbery that went beyond just thinking or talking about it; two, he would have committed the crime except that someone prevented him from committing the crime of robbery or he failed.

Id. at 415-16.

The court continued in this vein:

The crime of robbery is defined as follows: To prove the crime of robbery, the State must prove the following four elements beyond a reasonable doubt:  One, Lee Antwan Johnson took money or other property from the person or custody of Kenneth Pittman; two, force, violence,

23

> assault or putting in fear was used in the course of the taking; three, the property taken was of some value and, four, the taking was with the intent to permanently or temporarily deprive Kenneth Pittman of his right to his property or any benefit from it or appropriate the property of Kenneth Pittman to his own use or to the use of any person not entitled to it.

Id. at 416.

Not only did the court instruct on the burden of proof it instructed the jury that what the attorneys say is not evidence.  Id. at 130, 357. The court instructed the jury it was the state's burden of proof, obligating the state to prove the crime with which the defendant is charged was committed and the defendant is the person who committed the crime. Id. at 425.   The court reminded the jury that the defendant is not required to present evidence or prove anything.  Id.   Finally, the court recognized that Petitioner had become a witness, but the same rules apply to his testimony as to that of the other witnesses.  Id. at 428.

The Court finds, even if the prosecutor's comments could be interpreted as being improper, there was no prejudice because the court instructed the jury that the state had the burden of proving each element

of the charged offenses beyond a reasonable doubt, curing any improper suggestion of burden-shifting.   See United States v. Orellana, 341 F. App'x 501, 507 (11th Cir. 2009) (per curiam) (finding even if improper, remarks do not prejudice the defense if either the court's instructions or the government's explanation to the jury cured any prejudicial impact of the allegedly improper comment).

The court is not convinced that, under these circumstances, counsel's performance fell outside of the range of reasonably professional assistance.     Petitioner has not shown resulting prejudice as there is no reasonable probability that if defense counsel had objected, his objection would have been sustained under the circumstances presented as the comments do not amount to an improper burden-shifting argument but were proper comments on the evidence introduced at trial or were directly responsive to Mr. Fletcher's argument.   Finally, if there was a suggestion of burden-shifting, it was cured by the court's instructions to the jury.

Here, the circuit court applied the two-pronged Strickland standard. Thus, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. §

2254(d)(1) as the state court rejected Petitioner's claim of ineffective assistance of counsel based on <u>Strickland</u>.    Further, Petitioner has not shown the state court unreasonably applied <u>Strickland</u> or unreasonably determined the facts.    Indeed, upon review, the state court was objectively reasonable in its <u>Strickland</u> inquiry and in concluding defense counsel's failure to seek a mistrial was reasonable because the prosecutor's rebuttal argument "was fair comment on the evidence" as it was criticism of Petitioner's testimony "as missing critical explanations to refute the State's witnesses[.]" Ex. Q at 41.    Finding the prosecutor's argument fair comment, the circuit court went on to find the state did not improperly shift the burden of proof.    <u>Id</u>.    Consequently, the court held counsel was not ineffective for failure to seek a mistrial.    <u>Id</u>.    The 1st DCA affirmed.    Ex. V.

The 1st DCA's decision, although unexplained, is entitled to AEDPA deference.    Applying the look through presumption described in <u>Wilson</u>, the state's court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.    In sum, the Court finds the state court's adjudication of this claim is not contrary to or an

unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.

As the threshold standard of <u>Strickland</u> has not been met, Petitioner has failed to demonstrate that his state court proceeding was fundamentally unfair and his counsel ineffective. Thus, Petitioner has failed to demonstrate a Sixth Amendment violation under the United States Constitution. As such, Petitioner is not entitled to habeas relief on ground two.

## VI.   GROUND THREE

**Ground Three:   Whether the state court erred in denying Petitioner's claim that trial counsel was ineffective for failing to object to improper comments made by the prosecutor during trial.**

In ground three of the Petition, Petitioner asserts his counsel was ineffective for failure to object to improper comments of the prosecutor. Petition at 11. Petitioner references six comments, claiming they were improper and prejudicial. He, however, altered the words, phrasing, and punctuation reflected in the trial transcript. The Court provides the

comments as found in the record: (1) "He didn't plan on leaving his DNA on the gun[;]" (2) "Just some drug dealer.  That's the way that this defendant knew Kenneth Pittman[;]" (3) "The witness [David Williams] isn't the only one that feels that way.   It's this defendant's attitude, too. Kenneth Pittman wasn't related to him, didn't know him[;]" (4) "Who chooses?   He did.   He chose who to do this crime with, he chose who he could be around.   The time, the place, the victim[;]" (5) "[I]n the business of robbing people you're not supposed to cross, you're supposed to keep code, you're not supposed to rat out your co-defendants.   That's a hard thing, especially for Earl Johnson to swallow.   It took him awhile.   Just a line you're not supposed to cross.   But finally, after all of this, you do have to consider the testimony of the two people who admit they helped do this and they helped him do it."   "Who, ladies and gentlemen, is more likely to get on that stand and disregard the law, lie?   A person who has a felony conviction or one who's trying to beat a murder case?"; and (6) "[H]e didn't plan on . . . Lamont Brown actually developing a conscience and coming forward on his own."   Ex. G at 357-359, 363-64, 393.

Petitioner's initial contention goes to the prosecutor's statement: "He didn't plan on leaving his DNA on the gun." Id. at 358. The circuit court found although the prosecutor's statement was certainly a reach as the DNA evidence was weak, there was no prejudice because the jury did not find Petitioner had a gun or possessed a gun during the offenses. Ex. Q at 42-43. Any failure to object certainly did not prejudice the case. The next contention goes to the statements: "Just some drug dealer. That's the way that this defendant knew Kenneth Pittman." Ex. G at 358. Also, "[t]he witness [David Williams] isn't the only one that feels that way. It's this defendant's attitude, too. Kenneth Pittman wasn't related to him, didn't know him." Id. The record does not demonstrate that Petitioner personally knew the victim or that Petitioner adopted David Williams' attitude. However, attorneys are permitted wide latitude in closing arguments. Hammond v. Hall, 586 F.3d 1289, 1335 (11th Cir. 2009) (denying an ineffective assistance of counsel claim as failure to move for a mistrial based on prosecutorial misconduct within the wide range of reasonable professional assistance), cert. denied, 562 U.S. 1145 (2011).

The record shows Mr. Brown testified that Petitioner was present when the robbery was discussed and Mr. Brown, Earl Johnson, and Petitioner talked about the robbery.   Ex. G at 242-43.   Earl Johnson testified he targeted Mr. Pittman because he had drugs and money.   Id. at 184.   Earl Johnson attested he called David Williams to help with the robbery, but Mr. Williams did not want to help Earl Johnson because the targeted victim was Mr. Williams' cousin.   Id. at 184-85.   Earl Johnson said he went to speak with Mr. Brown and Petitioner was present when the discussion and planning took place to rob Mr. Pittman.   Id. at 185-86.

Thus, it was fair comment on the evidence, "to assume that when he [Earl Johnson] discussed the robbery with Brown and the Defendant, [Earl Johnson] told them whom he intended to rob and why."   Ex. Q at 43.   The circuit court found the comment "a logical inference" given the testimony.   Id.   The court also determined the speculative comments as to Petitioner's attitude were admittedly more of a reach based on the trial testimony, but found the comments, "were not so inflammatory or prejudicial that they likely would have resulted in a mistrial had counsel

objected."   <u>Id</u>. at 44.   Additionally, it could be surmised that if Petitioner joined in the plan to rob the victim, he exhibited a callous attitude towards the victim, as suggested by the prosecutor.

Petitioner contends defense counsel should have objected to the following: "Who chooses?  He did.  He chose who to do this crime with, he chose who he could be around.  The time, the place, the victim."  Ex. G at 359.  There was no basis to object to this argument as it was fair comment as to the evidence.  Based on the trial testimony of the co-defendants, Petitioner gathered with the co-defendants, Petitioner and his co-defendants discussed the robbery, Petitioner elected to participate in the crime, he traveled to Baldwin with the co-defendants to commit the crime, and he participated in the crime.

Of note, the Court is not convinced this comment paints Petitioner as "the mastermind of the crime."  Petition at 13.  Certainly it suggests Petitioner chose to be around Mr. Brown, he met with Mr. Brown and Earl Johnson, and the Petitioner and his co-defendants planned the crime and thereafter attempted to execute the planned robbery.  The overarching trial testimony showed Earl Johnson was the originator or

"mastermind" of the crime, as he admittedly selected and targeted the victim, and attested it was his plan and his robbery.   Ex. G at 184, 195.

Petitioner complains of improper vouching for witnesses through the following statements: "[I]n the business of robbing people you're not supposed to cross, you're supposed to keep code, you're not supposed to rat out your co-defendants.   That's a hard thing, especially for Earl Johnson to swallow.   It took him awhile.   Just a line you're not supposed to cross.   But finally, after all of this, you do have to consider the testimony of the two people who admit they helped do this and they helped him do it."   "Who, ladies and gentlemen, is more likely to get on that stand and disregard the law, lie?   A person who has a felony conviction or one who's trying to beat a murder case?"   Ex. G at 363-64, 393.

Improper vouching concerns whether the prosecutor places the prestige of the government behind a witness or improperly suggests that information not presented to the jury supports the witness's testimony. In Muhammad v. McNeil, 352 F. App'x 371, 376 (11th Cir. 2009) (per

curiam), <u>cert. denied</u>, 559 U.S. 1052 (2010), the Eleventh Circuit explained:

> A prosecutor's comments constitute improper "vouching" if they are "based on the government's reputation or allude to evidence not formally before the jury." <u>Eyster</u>,[2] 948 F.2d at 1206 (citing <u>United States v. Hernandez</u>, 921 F.2d 1569, 1573 (11th Cir.1991)). "The prohibition against vouching does not forbid prosecutors from arguing credibility, which may be central to the case...." <u>Hernandez</u>, 921 F.2d at 1573. Although improper vouching can be grounds for reversal, it may be cured if the remarks are not "substantially prejudicial" and any lingering prejudice is remedied by a careful cautionary instruction. <u>See</u> <u>United States v. Sarmiento</u>, 744 F.2d 755, 762–65 (11th Cir.1984).

In this instance, the prosecutor certainly did not place the prestige of the government behind the witness nor did the prosecutor improperly suggest that information not presented to the jury supports the witness's testimony.   Instead, the prosecutor argued Petitioner was more likely to lie because he was trying to beat a murder charge.   As for as the prosecutor's argument about Earl Johnson deciding to "rat out" his co-defendants even though there is a code among thieves to protect one

---

2 <u>United States v. Eyster</u>, 948 F.2d 1196 (1991).

another, there was trial testimony supporting this contention. Earl Johnson testified he has three prior felonies. Ex. G at 200. He also testified, for a year into his case, he did not point at Petitioner as being involved in the crime. Id. at 221. Earl Johnson said, prior to the removal of the death penalty case against him, he "wasn't saying nothing about nobody, period." Id. at 222.

To the extent the prosecutor's closing argument suggested that Earl Johnson was more candid and forthright than Petitioner due to Petitioner's current circumstances, the Court finds this did not render the trial fundamentally unfair. It was an isolated comment, and the prosecutor did not express a personal belief in the witness's credibility. Eyster, 948 F.2d at 1206. Indeed, the prosecutor did not make "explicit personal assurances of the witness' veracity." Id. Finally, the prosecutor's argument was not "based on the government's reputation or allude to evidence not formally before the jury. Id. (citing Hernandez, 921 F.2d at 1573).

The remaining comment to be addressed is the prosecutor's comment concerning Lamont Brown developing a conscience and coming

forward and naming Petitioner as a participant, surprising Petitioner. Ex. G at 357.   The jury heard Mr. Brown's testimony that he was arrested for this offense along with a couple of burglary charges and he accepted a plea to accessory to murder and one burglary.   Ex. G at 248. He testified he was present at Petitioner's house when Earl Johnson came and discussed a robbery.   Id. at 243.   Mr. Brown said he knew Petitioner, but he did not know him that well.   Id. at 256.   Mr. Brown attested he was picked up twenty to thirty days after the offense, giving him a lot of time to think about it.   Id. at 255.

Based on Mr. Brown's testimony, the prosecutor's comment was a fair comment on his testimony.   Although the statement concerning Mr. Brown "developing a conscience" may have been a stretch, Mr. Brown did testify he had time before he was picked up to contemplate his position and make some decisions.   Ultimately, he decided to accept a plea and then testified against Petitioner.

Counsel did not perform deficiently for failure to object to the closing argument.   The court, after reviewing the closing argument, found the prosecutor's remarks did not deprive Petitioner of a fair trial

and concluded the remarks were not so inflammatory as to have improperly influence the jury.  Ex. Q at 42.  Recognizing that during closing argument, counsel is permitted wide latitude in reviewing the evidence, discussing the testimony, and commenting on logical inferences from the evidence, the court found some remarks amounted to fair comment, some were not prejudicial to the defense, some were reasonably based on the evidence presented and did not amount to improper bolstering or vouching, and finally, the prosecutor did not place the prestige of the state behind his comments.  Id. at 42-45. As such, the court found Petitioner did not satisfy the performance prong of Strickland.  Id. at 45.

In denying post-conviction relief, the circuit court properly applied the Strickland standard.  The 1st DCA affirmed.  Ex. V.  Therefore, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1). Applying the look-through presumption set forth in Wilson, the Court finds the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.  Petitioner has not demonstrated that the state court unreasonably applied Strickland or

36

unreasonably determined the facts.   Thus, the 1st DCA's decision, although unexplained, is entitled to AEDPA deference.

The Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts.   As such, Petitioner is not entitled to habeas relief on ground three.

## VII.   GROUND FOUR

**Ground Four:   Whether the state court erred in denying Petitioner's claim that trial counsel was ineffective for failing to object to the Petitioner being convicted of the lesser included offense of robbery which is one step removed from attempted armed robbery where all parties agreed that there would be no lessers in the case.**

Petitioner, in his fourth ground for relief, claims the ineffective assistance of trial counsel for failure to object to the attempted armed robbery with a firearm instruction as it instructed on lesser included offenses and the parties had agreed, on the record, that no lesser included offenses would be given on count two.   Petition at 17.   He also argues

counsel was ineffective for failing to object to his conviction for the lesser included offense of robbery.   Id.   Petitioner claims he suffered prejudice as a result of counsel's failure to object.   Id.

The record demonstrates the following.   The Indictment charged Petitioner with three counts: (1) murder in the first degree; (2) attempted armed robbery with a firearm with actual possession of a firearm; and (3) shooting or throwing deadly missiles.   Ex. A at 21-22.   The state court tried Petitioner on all three offenses.   Ex. G.

To give context to the stipulation made at trial, the Court reviews the charge conference.   Ex. G at 351.   During a discussion of the proposed instructions and verdict forms, the following transpired:

> THE COURT: [for count one] So there's two lessers, second and manslaughter, correct?
>
> MR. MANTEI [the prosecutor]:   Yes, sir.
>
> MR. FLETCHER:   Yes, Judge.
>
> THE COURT:   All right.   What about **count two**, attempted robbery?   **No lessers on that**?
>
> MR. FLETCHER:   **No, sir, I'm not requesting that.**
>
> MR. MANTEI:   **No, Your Honor.**

> THE COURT:   And then the third count, no lessers on that one also, right?
>
> MR. MANTEI:   That's correct, Your Honor.

Id. at 355 (emphasis added).

The prosecutor asked if the court needed to make a change, and the court responded no, and said the court just wanted to show the parties something to be certain.   Id. at 356.   The parties approached, and then the prosecutor said, "[e]ither way he could be guilty of felony murder, that's correct."   Id. at 356.

Immediately after closing argument, the court charged the jury. Id. at 410.   With regard to the robbery count, the court instructed:

> As to count two, to prove the crime of attempt to commit robbery, the State must prove the following two elements beyond a reasonable doubt: One, Lee Antwan Johnson did some act toward committing the crime of robbery that went beyond just thinking or talking about it; two, he would have committed the crime except that someone prevented him from committing the crime of robbery or he failed.
>
> * * * *

The crime of robbery is defined as follows: To prove the crime of robbery, the State must prove the following four elements beyond a reasonable doubt: One, Lee Antwan Johnson took money or other property from the person or custody of Kenneth Pittman; two force, violence, assault or putting in fear was used in the course of the taking; three, the property taken was of some value and, four, the taking was with the intent to permanently or temporarily deprive Kenneth Pittman of his right to his property or any benefit from it or appropriate the property of Kenneth Pittman to his own use or to the use of any person not entitled to it.

　　　　　* * * *

The taking must be by the use of force or violence or assault so as to overcome the resistance of the victim or by putting the victim in fear so that the victim does not resist. The law does not require that the victim of robbery resist to any particular extent or that the victim offer any actual physical resistance if the circumstances are such that the victim is placed in fear of death or great bodily harm if he or she does resist. But unless prevented by fear, there must be some resistance to make the taking one done by force or violence.

Ex. G at 415-17.

The Court also instructed, in pertinent part:

If you find the defendant guilty of the crime of robbery, then you must further determine

40

beyond a reasonable doubt if in the course of committing the robbery – excuse me – the defendant carried some kind of weapon.

An act is in the course of committing the robbery if it occurs in an attempt to commit robbery or in flight after the attempt or commission.  If you find the defendant carried a firearm in the course of committing the robbery, you should find him guilty of attempted robbery with a firearm.  If you find the defendant carried a weapon that was not a firearm in the course of committing the robbery, you should find him guilty of attempted robbery with a weapon.  If you find the defendant carried no firearm or weapon in the course of committing the robbery, but did commit the robbery, you should find him guilty only of attempted robbery.

Id. at 418.

The court went on to define firearm and weapon.  Id. at 418-19.  It then instructed:

If you find the defendant committed attempted armed robbery with a firearm and you also find beyond a reasonable doubt that during the commission of the crime he actually possessed a firearm, you should find him guilty of attempted armed robbery with a firearm in his actual possession.

Id. at 419.

The court described the verdict form to the jury, noting that count two, the **attempted armed robbery count**, has several choices, including No. 1, finding defendant guilty of **attempted robbery as charged in the indictment**, with three choices under (A), being defendant carried a firearm in the course of committing the attempted robbery, the defendant carried a firearm [sic] that was not a firearm in the course of committing the attempted robbery, and the defendant did not carry a firearm or weapon.  Id. at 433-34 (emphasis added).  The court continued to describe the next portion of the verdict form asking the jury, if the jury found the defendant guilty, to determine whether the jury also found the defendant discharged the firearm, whether the defendant actually possessed or discharged the firearm, whether the defendant possessed a firearm, or whether the defendant did not actually possess a firearm during the commission of the offense.  Id. at 434. Finally, the court referenced the "not guilty" portion of the verdict form, referring to the charged offense as "armed robbery."  Id. at 434.

After the court read the instructions and excused the jurors, the court asked, "[s]tate and defense, is that the instructions that we all

agreed on?" Id. at 437.   The prosecutor responded affirmatively and waived any objection to the jurors dining separately or together, and then Mr. Fletcher said, "[t]hat's correct, Judge." Id.

Petitioner exhausted his claim of ineffective assistance of counsel by presenting it in Issue Five of the Supplemental Postconviction Motion. Ex. Q at 27-29.   He noted the agreement, stated on the record, that no lesser included instructions would be given as to count two. Id. at 28. He referenced the instructions as given by the trial court, including the attempted robbery instruction, asserting it is a lesser included offense of attempted armed robbery. Id.   He then argued that counsel's failure to object to the instruction after the parties agreed to no lesser offense instructions on count two constituted deficient performance.   Id. Finally, he argued prejudice, claiming counsel's failure to object resulted in prejudice. Id.   He explained:

> Had counsel objected to the jury being issued the lesser included offense jury instruction there is a reasonable probability that the outcome of the trial would have been different.
>
> The jury returned a verdict on the lesser charge of attempted robbery.

> Had the instruction on attempted robbery not been given there is a reasonable probability that the jury would have found the defendant not guilty of the underlying felony, and a not guilty finding of the underlying felony of attempted arm[ed] robbery would have resulted in a not guilty finding of felony murder.
>
> The jury found that the Defendant did not possess a firearm, therefore the jury did not believe that the defendant committed the murder.
>
> Had the lesser included instruction not been given, the jury would not have convicted the defendant of attempted arm[ed] robbery (as they did not) at trial.  Therefore the defendant was prejudiced by counsel's failure[.]

Id. at 28-29.

The circuit court rejected Petitioner's claim stating it did not consider the agreement to mean that "instructions **only on attempted armed robbery** be read to the jury."  Id. at 45 (emphasis added).  The court said the charge was "attempted robbery," as reflected in the verdict form.  Id.  The court explained that attempted robbery may be committed in one of three ways, (1) attempted robbery with a firearm; (2) attempted robbery with a weapon; and (3) attempted robbery with no firearm or weapon.  Id.  The court declined to grant relief finding,

"[b]ecause counsel did not stipulate that only attempted robbery with a firearm instructions be given, he was not ineffective for failing to object when the Court read [the] instruction on all three means of committing the crime of attempted robbery, or when the jury convicted him of attempted robbery, no firearm or weapon." Id. at 45-46.   The 1st DCA affirmed.   Ex. V.

The record demonstrates the following.   Petitioner was charged by Indictment with attempted armed robbery with a firearm with actual possession of a firearm, not attempted robbery.   Ex. A at 21.   The record also shows the trial court, throughout the course of the proceedings, referred to count two interchangeably as "attempted robbery" or "attempted armed robbery."   See, e.g., Ex. G at 7 (attempted armed robbery); 14 (attempted armed robbery); 15-16 (attempted armed robbery); 129 (attempted armed robbery); 355 (attempted robbery); 410 (attempted armed robbery); 413 (attempting to commit robbery); 414 (attempted robbery); 415 (attempt to commit robbery); 416 (attempt to commit armed robbery); 419 (attempted armed robbery); 433 (attempted

armed robbery; attempted robbery as charged in the Indictment, attempted robbery); 434 (armed robbery).

To further complicate the matter, the Verdict form specifically states, "We, the jury, find the Defendant guilty of Attempted Robbery, as charged in the Indictment" although the Indictment charges Petitioner with attempted armed robbery with a firearm with actual possession of a firearm.   Ex. D at 727.   Perhaps as a result this inconsistent terminology throughout the proceedings, the original Judgment, dated November 15, 2012, incorrectly refers to the conviction as "attempted armed robbery."   Ex. E at 771-72.   Again, Petitioner was charged with attempted armed robbery, but the jury found him guilty of attempted robbery.   The court sentenced Petitioner to a fifteen-year sentence that was later reduced after the 1st DCA ordered that Petitioner be sentenced for a third-degree felony, attempted robbery.   Id. at 774-76; Ex. M.   The trial court entered a corrected judgment for a third-degree felony, "attempted robbery," and sentenced Petitioner to five years in prison on count two.   Ex. O.

46

At the outset of the trial, the court advised the jury Petitioner is charged with three crimes, murder in the first degree, **attempted armed robbery**, and shooting or throwing a deadly missile.   Ex. G at 129 (emphasis added).   The state's entire case, charging both murder and attempted armed robbery with a firearm, was based on the theory that Petitioner was the shooter who possessed and discharged a firearm, killing the victim in an attempted armed robbery.   As evidenced by the verdict, the jury did not find Petitioner possessed a firearm or carried a firearm or weapon.   Ex. D at 725-29.   Instead, the jury found Petitioner guilty of felony murder and attempted robbery.   Id.

Generally, this Court defers to the state court's findings of fact pursuant to 28 U.S.C. § 2254(e)(1).   Here, however, Petitioner has rebutted the presumption of correctness by clear and convincing evidence.   Id.   Although the trial court inaccurately referred to count two as a charge of attempted robbery, the Indictment shows Petitioner was charged with attempted armed robbery with a firearm pursuant to Fla. Stat. §§ 812.13(2)(a) & 777.04(1) (attempt).   Also of import, the

record shows the parties did agree and stipulate, on the record, that no lesser included offenses would be charged for count two.

The circuit court's explanation that, "[t]he charge, as noted by the Court and stated on the jury verdict form was 'attempted robbery,' which may be committed in one of three ways, attempted robbery with a firearm, attempted robbery with a weapon, and attempted robbery with no firearm or weapon," is unpersuasive.   Also, the court's conclusion that counsel did not stipulate that only the instructions for attempted robbery with a firearm would be given is contradicted by the explicit statements made on the record by both the state and defense counsel, constituting a waiver of lesser offenses.   There is no reasonable explanation for the parties' statements, other than that they did not want "lessers" on count two.

Of import, the court used the plural form, inquiring: "[n]o **lessers** on that?"   Ex. G at 355 (emphasis added).   When the parties responded they were not requesting lesser-included offenses on count two, the parties did not request or identify any specific lesser-included offense instructions excepted from the agreement.   Of note, "[a] trial judge is

48

required to give an instruction when timely requested on necessarily lesser included offenses of the crime charged." <u>Growden v. State</u>, 372 So. 2d 930, 931 (Fla. 1979) (citing <u>State v. Terry</u>, 336 So. 2d 65 (Fla. 1976)). Thus, if requested by defense counsel, the trial court must give an instruction on a necessarily lesser included offense, that is an offense that is "an essential aspect of the major offense[.]" <u>Id</u>. (quoting <u>Brown v. State</u>, 206 So. 2d 377, 382 (Fla. 1968)). The lesser-included crimes of attempted robbery with a firearm with actual possession of a firearm are attempted robbery with a firearm, attempted robbery with a weapon, attempted robbery, and theft.[3] <u>Page v. Sec'y, Dep't of Corr.</u>, No. 20-11807-A, 2020 WL 9349198, at *2 (11th Cir. Aug. 26, 2020) (not reported in F. Rptr.). <u>See Grant v. State</u>, 189 So. 3d 878, 881 (Fla. 4th DCA 2016) (noting attempt to commit armed robbery with a weapon "is a necessarily lesser-included offense of attempted armed robbery with a firearm," and should have been instructed if defense counsel **requested** the court instruct on this lesser-included charge) (emphasis added).

---

3 In Petitioner's case, the trial court did not give a theft instruction.

Notably, in <u>Page</u>, the attempted felony-murder conviction was predicated on attempted robbery, and as such, all of the elements of the attempted robbery "must also necessarily be proven" to convict the defendant of attempted first-degree felony murder.   <u>Page</u>, 2020 WL 9349198, at *6.   <u>See</u> <u>McDonald v. Sec'y, Dep't of Corr.</u>, No. 8:18-cv-973-T-33CPT, 2018 WL 10517118, at *7 (M.D. Fla. Oct. 31, 2018) ("attempted robbery is sufficient to support a first-degree felony murder charge under Florida law") (citing <u>Johnson v. State</u>, 804 So. 2d 1218, 1223 (Fla. 2001)). However, in <u>Page</u>, there was no stated agreement that there would be no instructions on the lesser-included offenses.   <u>Page</u>, 2020 WL 9349198, at *2.

In Petitioner's case, defense counsel and the state announced the decision not to request instructions on lesser-included offenses on count two.   Thus, Petitioner, with the state's agreement, waived all lesser-included offenses.   When a defendant is charged in Florida with attempted armed robbery with a firearm pursuant to Fla. Stat. § 812.13(2)(a) (robbery with a firearm) and Fla. Stat. § 774.04(1) (attempts), and the defense counsel and the state stipulate that no lesser-

included charges be given, lesser-included charges should not be given by the trial court because, "under Florida law, a defendant can, with the State's agreement, waive lesser included offenses, See Jones v. State, 484 So.2d 577, 579 (Fla. 1986)[.]" Livingston v. Crosby, No. 804CV1566T27TBM, 2006 WL 1000312, at *12 (M.D. Fla. Apr. 14, 2006) (not reported in F.Supp.2d).[4]

Notably, the record demonstrates that with regard to the other two counts, the trial court complied with the parties' decisions as to whether lesser offense instructions should be given.   For example, on the murder count, the court instructed on the two lesser offenses agreed upon by the parties: second degree murder and manslaughter.   Ex. D at 725-26; Ex. G at 420-24.   Also, for count three, as agreed upon by the parties, the court gave no instructions on lesser offenses for the charge of shooting or throwing deadly missiles.   Ex. D at 729; Ex. G at 419-20.

---

4 Respondents argue Petitioner's desire to limit the jury to "all or nothing at all" on count two did not preclude the trial court from instructing the jury as it did or preclude the conviction for the crime of attempted robbery.   Response at 52.   Based on the law, however, a defendant, with the state's agreement, may waive lesser included offenses, exactly as done in this case.   Therefore, counsel should have objected in order to attempt to preclude the trial court from instructing the jury as it did on count two.

Respondents contend the court properly utilized the standard Florida jury instruction for robbery, in compliance with Florida statutory law and standard jury instructions.   Response at 53.   The record shows Petitioner was charged with attempted armed robbery with a firearm with actual possession of a firearm, the court did not comply with the parties' agreement as to the instructions, and defense counsel should have objected to the trial court's non-compliance with the stated agreement.   The jury instruction on count two improperly included lesser-included offenses and all lesser included offenses were waived by Petitioner, with the state's agreement.   As to the charged offenses, Petitioner was facing a sentence of life without parole on the first-degree murder charge and up to fifteen years on count two, the second-degree felony of attempted armed robbery.   Of note, "[t]he seriousness of the charges against the petitioner is an appropriate factor that a court may take into consideration when assessing counsel's performance."   <u>Daniel v. Thigpen</u>, 742 F. Supp. 1535, 1560 (M.D. Ala. 1990) (citing <u>Magill v. Dugger</u>, 824 F.2d 879, 886 (11th Cir. 1987)).   As such, the failure to object to the trial court's instructions, including lesser including offenses

for count two, amounted to conduct below an objective standard of reasonableness expected from a reasonably attorney.   Indeed, failure to object to the improper charges given does not "constitute reasonable conduct under prevailing professional norms."   Id.

Furthermore, Petitioner can demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   In Petitioner's case, there is a critical connection between the charge of attempted armed robbery and the charge of felony murder; without a conviction for attempted armed robbery with a firearm with actual possession of the firearm, there can be no conviction for felony murder.   See McDonald, 2018 WL 10517118, at *15.   The Court opines that a properly instructed jury, with a charge given in compliance with the agreed upon waiver of the lesser offenses, might well have rendered a different verdict.   Had an objection been made by defense counsel, the trial court would have had the opportunity to correct the erroneous charge given for count two.   Once corrected, there is a reasonable probability that the appropriate jury instructions would have resulted in the jury not finding Petitioner guilty of attempted

53

armed robbery, and, as a result, not finding Petitioner guilty of felony murder in the absence of a conviction for the underlying felony.

The Court finds Petitioner has satisfied the prejudice prong of Strickland by demonstrating that counsel's failure to object to the instruction as given by the court resulted in Petitioner's conviction for felony murder as the jury was instructed it could convict based on the lesser-included charge of attempted robbery in direct contravention of the parties' waiver by agreement of the instructions for the lesser offenses for count two.

The Court must address whether the summary affirmance by the 1st DCA of the circuit court's decision is based on flawed reasoning.  Gill v. Mecusker, 633 F.3d 1272, 1289 (11th Cir. 2011).  In undertaking its review, this Court must look at the denial of the claim and whether there has been an unreasonable application of federal law, not just an incorrect application of federal law.  Richter, 562 U.S. at 101 (citation omitted). If it is possible fair-minded jurists could disagree on the correctness of the state court's decision, a petitioner is not entitled to habeas relief.  Id. (citation omitted).

The trial court denied Petitioner's claim, finding counsel was not ineffective for failing to object to the trial court's instruction and Petitioner's conviction.   Ex. Q at 45-46.   Thus, the court concluded Petitioner did not satisfy the first prong of <u>Strickland</u>, the performance prong.   After due consideration, the Court finds counsel's performance was deficient in failing to object to the trial court's instructions and his conviction.   It is true that a defense attorney need not make a meritless motion or lodge a futile objection that would not have obtained relief. <u>Brewster v. Hetzel</u>, 913 F.3d 1042, 1056 (11th Cir. 2019).   Here, however, the parties stipulated on the record that no lesser-included offenses would be included in the instructions on count two, waiving the instructions on the lesser offenses.

Count two of the Indictment is attempted armed robbery with a firearm with actual possession of the firearm.   The trial court, in non-compliance with the agreement, gave instructions on the lesser-included offenses of attempted robbery with a firearm, attempted robbery with a weapon, and attempted robbery.   Ex. D at 727-28.   Thus, under the circumstances presented, an objection would have had merit and should

have been sustained based on the stipulation announced on the record. As the state agreed that no lesser-included offenses would be given for count two, there would have been no well-founded reason to overrule an objection to the instruction given on count two.

In this instance, counsel's error was sufficiently egregious and prejudicial. If counsel had objected, his objection would have been sustained based on the stated stipulation on the record and the specific waiver of instructions on lesser offenses for count two. As a consequence, the jury would have been instructed, as agreed upon, only on the offense of attempted armed robbery with a firearm with actual possession of the firearm. Since the jury was not convinced beyond a reasonable doubt that Petitioner possessed or carried a firearm or weapon during the charged offense of attempted armed robbery with possession of a firearm, there would have been no conviction for the underlying offense of attempted armed robbery supporting the conviction for felony murder.

In conclusion, Petitioner has satisfied the prejudice prong of Strickland as well as the performance prong. There is a reasonable

probability that, but for counsel's error, the result of the proceeding would have been different.   The jury rejected the state's contention that Petitioner was the shooter or even possessed or carried a firearm during the offenses.   If there were no underlying felony conviction, there could be no conviction for felony murder.   Ex. G at 413 (instruction on first degree felony murder).   Therefore, no competent attorney would have failed to object to the court's instructions on count two.[5]   See Driggers v. Sec'y, Dep't of Corr., No. 5:16-cv-CV-63-Oc-10PRL, 2018 WL 10593632, at *5 (Nov. 20, 2018) (inquiring whether failure to object could constitute "part of the management of the case").

Upon review, there is an unreasonable application of clearly established law in the state court's decision to reject the ineffectiveness claim under Strickland.   The decision of the 1st DCA is not entitled to deference under AEDPA.   Richter, 562 U.S. at 102 ("[AEDPA] preserves

_____

[5] The Court acknowledges that the circuit court did not hold an evidentiary hearing on Petitioner's claim of ineffective assistance of counsel.   Even if it had, there is no sound tactical reason that could be offered to support a decision not to object to the instructions under these circumstances, after waiver of lesser included offenses with the agreement of the state.     Failure to object could not constitute reasonable conduct under prevailing professional norms; "[s]ound trial strategy cannot contemplate the abdication of a lawyer's responsibility to participate on his client's behalf in the process of charging the jury[.]" Daniel, 742 F. Supp. at 1560.

authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents."). In Petitioner's case, the state court did not reasonably determine the facts, nor did it reasonably apply federal law in rejecting the claim of ineffective assistance of counsel. Here, the 1st DCA's decision was so lacking in justification that there was an error well understood and comprehended in law beyond any possibility for fairminded disagreement. As such, Petitioner is entitled to habeas relief on his claim of ineffective assistance of counsel raised in ground four of the Petition.

## VII.  GROUND FIVE

**Ground Five:  Whether the state court erred in denying Petitioner's claim that the cumulative effect of trial counsel's errors was prejudicial to Petitioner as it affected the outcome of trial.**

Petitioner, in ground five, contends, "[t]he cumulative effect of counsel's failure to make proper objections and motions resulted in prejudice to Petitioner as there is a reasonable possibility that the

outcome of the trial would have been different.    Petition at 22. Petitioner asserts, had he received a fair trial with effective counsel, there is a reasonable probability that the jury would have found reasonable doubt and not convicted him.    Id.

Respondents assert this claim is unexhausted and procedurally defaulted because Petitioner did not label the claim as a separate ground but rather placed it under the heading, Cumulative Effect.    Response at 56.    Upon review, the circuit court treated it as a separate claim for relief and summarily denied the claim of cumulative error.    Ex. Q at 45-46. The 1st DCA affirmed.    Ex. V.    Therefore, this Court will also consider the claim of cumulative error as an exhausted, separate claim for relief.

If there is no error or only a single error, there can be no cumulative error.    Pierre v. United States, No. 18-12038-A, 2019 WL 5967873, at *2 (11th Cir. May 30, 2019) (not reported in F. Rptr.) (citing United States v. Gamory, 635 F.3d 480, 497 (11th Cir. 2011)).    As such, Petitioner is not entitled to relief on this ground.

The state court properly applied the two-pronged Strickland standard of review.    Therefore, Petitioner cannot satisfy the "contrary

to" test set forth in 28 U.S.C. § 2254(d)(1) as the state court rejected the claim relying on <u>Strickland</u>.   Petitioner has not shown that the state court unreasonably applied <u>Strickland</u> or unreasonably determined the facts.   Upon review the state court was objectively reasonable in its inquiry and the 1st DCA affirmed.   The 1st DCA's adjudication of the claim is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts. Therefore, ground five is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED IN PART AND DENIED IN PART.**

2.    The writ of habeas corpus will be conditionally **GRANTED** as to ground four for the reasons discussed above, within **ninety (90) days** from the date of this Order, unless the State of Florida initiates new trial proceedings in state court consistent with the law.   The Court **DENIES with prejudice** grounds one, two, three, and five.

3.     Petitioner's convictions for murder in the first degree and attempted robbery are **VACATED**, and Respondents are directed to forthwith take all action necessary to ensure that the state trial court is apprised of this ruling and that a new trial (or other appropriate disposition) is ordered in an expeditious fashion.

4.     The **Clerk** shall enter judgment conditionally granting relief in favor of Petitioner as to ground four, and in favor of Respondents on all remaining claims and close the case.

5.     The **Clerk** shall send a copy of this Order to the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida.

6.     If Petitioner appeals the denial of his Petition (Doc. 1), **the Court denies a certificate of appealability as to grounds one, two, three, and five.**[6]   Because this Court has determined that a certificate of appealability is not warranted on those grounds, the **Clerk** shall

---

[6] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

7.     Respondents, no later than **February 8, 2023**, shall notify the Court as to the date of the new trial or other disposition of Petitioner's case.

**DONE AND ORDERED** at Jacksonville, Florida, this **26**ᵗʰ day of October, 2022.

UNITED STATES DISTRICT JUDGE

sa 10/4
c:
Lee Antwan Johnson
Counsel of Record
Circuit Court (4th Judicial Circuit, Duval County, Florida)